```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JOSEPH A. FERRARA, SR.; FRANK H.
FINKEL; MARC HERBST; DENISE
RICHARDSON; THOMAS F. CORBETT;
ANTHONY D'AQUILA; THOMAS GESUALDI;
LOUIS BISIGNANO; DOMINICK MARROCCO;
and ANTHONY PIROZZI,

                        Plaintiffs,

            -against-                       MEMORANDUM & ORDER
                                            11-CV-5841(JS)(GRB)
A STAR BUSINESS SERVICE OF NEW YORK
CORP. and BASS & BASS WGP, INC.,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:    Joseph J. Vitale, Esq.
                   Zachary N. Leeds, Esq.
                   Cohen, Weiss and Simon LLP
                   330 West 42nd Street
                   New York, NY 10036

For Defendants:    No appearances.
```

SEYBERT, District Judge:

Pending before the Court is Magistrate Judge Gary R. Brown's Report and Recommendation ("R&R"), issued on February 26, 2013.  For the following reasons, the R&R is ADOPTED in its entirety.

BACKGROUND

The Court assumes familiarity with the underlying facts of this case, which are described in detail in Judge Brown's R&R.  Briefly, Plaintiffs Joseph A. Ferrara, Sr.; Frank

H. Finkel; Marc Herbst; Thomas N. Corbett; Denise Richardson; Anthony D'Aquila; Thomas Gesualdi; Louis Bisignano; Dominick Marrocco; and Anthony Pirozzi (collectively "Plaintiffs"), as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, the "Funds") commenced this action against A Star Business Services of New York Corp. and Bass & Bass WGP, Inc. (together, the "Defendants") on December 1, 2011 seeking injunctive and monetary relief under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145. The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of Sections 3(3) and 3(37) of ERISA. (Compl. ¶ 4.) Defendants are "employers" within the meaning of ERISA (Compl. ¶ 8).

The Funds collect benefit contributions from employers, including Defendants, pursuant to a Restated Agreement and Declaration of Trust (Trust Agreement). (Compl. ¶ 6.) Defendants are also parties to a collective bargaining agreement ("CBA"), which binds them to the Trust Agreement and requires them to make contributions to the Funds on behalf of covered employees. (Compl. ¶ 5.) Under the Trust Agreement, Defendants were to submit remittance reports with each payment

2

to the Funds, including a statement of the number of covered employees and the number of hours worked by those employees. (Compl. ¶ 12.) The Trust Agreement also requires Defendants to submit to periodic audit reports. (Compl. ¶ 13.)

Plaintiffs allege that, despite two requests for audits, Defendants did not submit to a "complete audit." (Compl. ¶ 21-23.) Defendants have not submitted appearances in this action, and on February 21, 2012, the Clerk of the Court entered a certificate of default. (Docket Entry 5.) Plaintiffs have since moved for a default judgment, which this Court referred to Judge Brown.

## DISCUSSION

Judge Brown made the following recommendations: (1) that an order issue directing defendants to submit to an audit of their books and records within thirty days; (2) that Plaintiffs be given sixty days to complete the audit and to make any further submissions with respect to Plaintiffs' application for unpaid contributions, interest on unpaid contributions, and liquidated damages, and for additional attorneys' fees and costs; and (3) that Plaintiffs be awarded attorneys' fees and costs in the amount of $4,681.74. Plaintiffs, though agreeing with most of the R&R, lodge specific objections to some of Judge Brown's recommendations. The Court will first address the

3

standard of review before addressing the recommendations and Plaintiffs' objections.

I. Standard of Review

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous." Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002) (citation omitted). A party may serve and file specific, written objections to a magistrate's report and recommendation within fourteen days of receiving the recommended disposition. See FED. R. CIV. P. 72(b)(2). Upon receiving any timely objections to the magistrate's recommendation, the district "court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b). A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they object. See Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (citations omitted).

When a party raises an objection to a magistrate judge's report, the Court must conduct a de novo review of any contested sections of the report. See Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). But if a party "makes only

4

conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008). Furthermore, even in a de novo review of a party's specific objections, the Court ordinarily will not consider "arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance." Kennedy v. Adamo, No. 02-CV-1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006).

II. Recommendations and Objections

Plaintiffs do not object to the general holdings of the R&R--namely, that this Court should issue an order directing Defendants to submit to an audit of their books and records within thirty days, that Plaintiffs be given sixty days to complete the audit and to make further submissions, and that Plaintiffs be awarded attorneys' fees and costs in the amount of $4,681.74. Therefore, the R&R is ADOPTED in its entirety. However, Plaintiffs make specific objections which, at this stage, are primarily academic. In any event, in adopting the R&R, the Court notes some particular qualifications.

5

A. <u>Estimated Damages</u>

Plaintiffs object to the R&R to the extent that it recommends that Plaintiffs not be permitted to seek damages based on an estimated audit.

The R&R essentially states that, at this stage, the Court cannot determine the amount of monetary damages, if any. This is because there must first be an injunction providing Defendants the opportunity to submit to an audit. The Court's analysis in this respect is correct. <u>See</u> <u>Gesualdi v. Innovative Disposal Sol.</u>, No. 09-CV-0820, 2011 WL 1158444, at *4 (E.D.N.Y. Jan. 18, 2011) ("Once the plaintiffs attempt to conduct the audit or if the defendant refuses to provide its books and records for such audit, the court will have a basis for determining the full amount of damages to be awarded to the plaintiffs.").

To the extent that the R&R expresses concern regarding "estimated" contributions due, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999). After there has been an audit, or Defendants fail to comply with the Court's Order directing them to submit to one, Plaintiffs correctly note that the CBA and Trust Agreement authorize the Funds to

6

calculate estimated contributions based on specific formulae. (Cody Decl. Ex. A at 28-29, Docket Entry 8.)

Thus, Plaintiffs' motion for damages is denied, at this stage, with leave to replead following an audit or the thirty day period in which Defendants may submit to an audit. Thereafter, Plaintiffs are free to submit a motion for damages based upon the estimate formulae. See Cement and Concrete Workers District Counsel Welfare Fund, Pension Fund, Annuity Fund, Ed. and Training Fund and Other Funds v. Metro Found. Contractors, Inc., 699 F.3d 230, 235 (2d Cir. 2012) ("We now explicitly adopt the rule that the parties to a CBA may set forth in the agreement an alternate method of calculating contributions owed in the event the employer fails to comply with its contractual duty to provide its books and records without running afoul of the requirement that damages be calculated with reasonable certainty.") (internal quotation marks and citation omitted); Ferrara v. Metro D Excavation & Found., Inc., No. 10-CV-4215, 2011 WL 3610896, at *4 (E.D.N.Y. July 7, 2011) ("As defendant failed to submit to an audit, plaintiffs have estimated the contributions due to the Funds using the formulas set forth in the trust agreement."), adopted by 2011 WL 3625448. To be clear, the Court is not expressing any opinion as to whether Plaintiffs' damages calculations based upon the estimates will be accepted or denied. Rather, the

7

Court seeks to clarify the R&R and allay Plaintiffs' apparent concerns regarding any perceived prohibition against the estimated figure.

B. Contributions

Plaintiffs further object to the R&R insofar as they read it to suggest that the estimated audit findings would not be "contributions" under ERISA Section 502(g)(2), and therefore, no interest, liquidated damages, or attorney's fees, which are mandatory in a contribution collection action under ERISA Section 515 would be recoverable.

The R&R does not say as much, and in fact provides Plaintiffs with the opportunity to renew their motion for damages and make any further submissions regarding unpaid contributions. (R&R at 13-14.) Rather, the R&R notes that Plaintiffs' claim for an injunction requiring Defendants to submit to an audit under ERISA Section 502 is perhaps more explicit than its claim for unpaid contributions pursuant to ERISA Section 515. Again, Plaintiffs' subsequent submissions may clarify this potential flaw.

Suffice it to say at this juncture, however, that Plaintiffs have alleged that Defendants did not comply with the terms of the CBA and Trust Agreement. See Cement & Concrete Workers, 699 F.3d at 235 (discussing alternate method of calculating contributions when defendant fails to comply with

8

its contractual duty).  Moreover, Plaintiffs allege that Article IX, Section 1(f) of the Trust Agreement provides that "an Employer who submits the required remittance reports, but thereafter fails to comply with an audit request within twenty days of written demand, is liable for an additional monthly contribution, which is computed 'by taking 50 percent of the number of hours reported for that month and [] multiplying said number of hours by the current contribution rate." (Compl. ¶ 19.)  In addition, the Complaint states that "Defendants, by virtue of their failure to submit its pertinent books to an audit within twenty (20) days of written demand, are further liable for an increased monthly contribution for each month during the period for which the books and records were not produced." (Compl. ¶ 30.)

 Therefore, Plaintiffs are also permitted to submit a request for additional fees pursuant to Section 502(g)(2) upon their renewed motion for damages.

 C. <u>Time Frame</u>

 Moreover, Plaintiffs object to a portion of the R&R that states that "justice does not call for an award of 'estimated' damages related to pay periods in 2012 when plaintiffs made their most recent request for an audit in October 2011." (R&R at 13.)  Any objection in this regard is moot, as the injunction requiring Defendants to submit to an

9

audit of their books and records alleviates any concern regarding the timing of Plaintiffs' last request for an audit.

In any event, the Court takes this opportunity to clarify that the injunction compels Defendants to provide "pertinent books and records for the period from July 15, 2010 through the last day on which Defendants are required to remit contributions to the Funds . . ." (Compl. at 9, ¶ 1). Accordingly, should Plaintiffs chose to renew their motion for damages, the renewed motion may cover said time period. See Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Daniel Weintraub & Assocs., Inc., No. 04-CV-2611, 2007 WL 4125453, at *6 (E.D.N.Y. Nov. 16, 2007) ("[D]efendants were placed on notice by the Complaint, by the Order of Judgment, and by the papers submitted in connection with the motion for default, that plaintiffs have demanded an award of additional contributions accrued during the pendency of the litigation.").

D. Interest Rate

Moreover, Plaintiffs seek to clarify the applicable interest rate on unpaid contributions to the Funds. As the R&R correctly notes, the Trust Agreement provides that the interest rate applicable to contributions that are paid late to the funds is set by the New York General Obligations Law § 5-501. (R&R at 4; Cody Decl. Ex. A at 30.) However, that provision has since been amended and the applicable interest rate is now 1½% per

10

month or 18% per year. (Cody Decl. ¶¶ 28-29 and Ex. A at ECF # 74.[1])

CONCLUSION

Judge Brown's R&R is ADOPTED in its entirety, with the clarifications and qualifications discussed above.

Defendants are hereby ORDERED to submit to an audit of their books and records within thirty days of the date of this Order.

Within ninety days of the date of this Order, Plaintiffs shall complete their audit and file any further submissions with respect to Plaintiffs' application for unpaid contributions, interest on unpaid contributions, and liquidated damages, and for additional attorneys' fees and costs.

Plaintiffs shall serve a copy of this Memorandum and Order on Defendants and file an Affidavit of Service with this Court, on or before April 8, 2013.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March  27 , 2013
       Central Islip, NY

---

[1] "ECF" refers to the Court's Electronic Case Filing System and the pagination provided therein.

11